[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant Jack Emerson appeals from an order of the Montgomery County Court of Common Pleas, Domestic Division, overruling his objections to, and adopting, a magistrate's decision. In her decision, the magistrate refused to substitute Qualified Domestic Relations Orders (QDRO's) prepared by Mr. Emerson's attorney for QDRO's prepared by Mrs. Emerson's counsel, on the basis that the documents were substantially the same. Mr. Emerson contends that the magistrate's decision was incorrect, and that the trial court erred by adopting it. Mr. Emerson also contends that the trial court erred by failing to consider evidence proffered in support of his objections to the magistrate's decision.
We conclude that the trial court did not abuse its discretion by overruling Mr. Emerson's objections, which were not supported by the record or by any cited authority. Furthermore, the trial court did not err by failing to consider proffered evidence, which was neither presented to the magistrate nor germane to the magistrate's decision.
Accordingly, the judgment of the trial court is Affirmed.
 I
Jack and Linda Emerson were divorced on January 18, 1994. A final judgment and decree of divorce was entered which, among other things, divided the pension plans of both parties. The portion of the Final Judgment and Decree of Divorce relevant to this appeal provides as follows:
 9. RETIREMENT. A Qualified Domestic Relations Order (QDRO) shall issue to the Plan Administrator at Wright Patt Credit Union * * * for the Plaintiff's retirement plan, Wright Patt Credit Union, Inc. Employee Defined Pension Plan. The formula that shall be utilized in said QDRO shall be as follows: The Defendant shall receive a one-half (~) share of the pension plan as of the date of November 12, 1993.
 A Qualified Domestic Relations Order (QDRO) shall issue to the Plan Administrator, * * * for the Defendant's Civil Service retirement plan through Wright Patterson Air Force Base. The formula that shall be utilized in said QDRO shall be as follows: The Plaintiff shall receive a one-half (~) share of the Civil Service pension plan as of the date of November 12, 1993.
 A Qualified Domestic Relations Order (QDRO) shall issue to the Plan Administrator * * * for the Defendant's Air Force Retirement pay. The formula that shall be utilized in said QDRO shall be as follows: The Plaintiff shall receive one-half (~) of seventeen (17) years of marriage divided by twenty-one (21) years of service.
The decree did not state which party was to prepare the necessary QDRO's. No appeal was taken from the decree.
According to Mr. Emerson's appellate brief, his counsel agreed that counsel for Mrs. Emerson would prepare the QDRO's. Mr. Emerson claims that Mrs. Emerson's attorney failed to prepare the documents in a timely manner, and that her attorney avoided attempts by his attorney to discuss the matter. The record reveals that the parties each filed motions to hold the other in contempt for failure to cooperate in the drafting of the documents. An agreed order was entered on April 23, 1996 which stated, in pertinent part, as follows:
 The [plaintiff and defendant] shall both cooperate fully to provide any needed information for the three QDRO's and [Mrs. Emerson's attorney] shall be responsible to prepare and file all three QDRO's within forty-five days.
The record reveals that three QDRO's were filed on June 25, 1997. According to Mr. Emerson, he was not provided an opportunity to review the QDRO's prior to their entry. He thereafter filed a motion for relief from judgment pursuant to Civ. R. 60(A) and (B). In the motion, he alleged that he was entitled to relief pursuant to Civ. R. 60(A) because the court erred in allowing the QDRO's to be filed without his approval. He also alleged that he was entitled to Civ. R. 60(B) relief because Ms. Emerson's attorney had "intentionally misrepresented to the Court the character of the submitted QDRO's and in fact inserted into these documents terms and conditions wholly beneficial to the Plaintiff which were not so ordered by the Court and which were not agreed to by the Defendant, such to advantage the Plaintiff and compromise and disadvantage the Defendant's interests."
The magistrate entered an order permitting Mr. Emerson to file a brief and proposed QDRO's. Thereafter, Mr. Emerson submitted proposed amended QDRO's for the magistrate's review. On February 17, 1998, the magistrate issued a decision and order denying the requested Civ. R. 60 relief. The magistrate, in overruling the motion, stated in part as follows:
 The defendant's motion for relief from judgment filed July 8, 1997, basically complains that he was unable to review the documents before they were approved by the judge and filed in this matter. However, one would note that the delay has been inexcusable in terms of putting these QDRO's in effect. The parties were divorced in 1994 and both parties' rights in the pensions of the other were unprotected for a period of over two years. The defendant's counsel alleges numerous errors and misstatements, clerical and otherwise, and fraud and misrepresentation, etc. However, the QDRO's in effect have been reviewed carefully and appear to be in compliance with the court order. Counsel for the defendant was given the opportunity to submit alternate QDRO's and in reviewing same, there does not appear to be any substantial difference between those that have been accepted by the plan administrator and are already filed in this matter and those which are submitted by the defendant for approval.
 It is the conclusion of this magistrate that the defendant's request for relief is without merit and is hereby overruled.
 IT IS THEREFORE ORDERED that the defendant's motion for relief form judgment is denied and hereby overruled. The Qualified Domestic Relations Court Orders which were approved by this court at an earlier time and filed June 25, 1997 shall remain in full force and effect.
Mr. Emerson filed objections to the magistrate's decision, but they were overruled, and the trial court adopted the magistrate's decision. Mr. Emerson appeals from that decision.
 II
Mr. Emerson's Second Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION AND PERMANENT ORDER.
Mr. Emerson contends that the trial court erred by overruling his objections to the magistrate's decision, and by thus permitting the original QDRO's submitted by Mrs. Emerson to remain in effect. In support, he argues that the magistrate's finding of "inexcusable delay" in filing the QDRO's was correct. However, he argues that by permitting the original QDRO's to remain in effect, the magistrate unfairly penalized him for the delay which he claims was solely attributable to the dilatory actions of Mrs. Emerson's counsel. Mr. Emerson also argues that the magistrate's finding that the proposed QDRO's submitted by his attorney were substantially the same as the originals was in error.
We begin by noting that Civ. R. 53(E)(3) mandates that objections to a magistrate's report "shall be specific and state with particularity the grounds of objection." In his appellate brief, Mr. Emerson specifically refers to numerous clauses contained within the original QDRO's which he claims renders them improper and deficient. However, in reviewing his objection to the magistrate's decision, we note that many of the items listed in the appellate brief were not raised with any particularity at the trial court level. In fact, the following language, taken verbatim from the objections, supports a finding that Mr. Emerson failed to raise a majority of the disputed matters with particularity:
 * * * there are so many problems with the Plaintiff's QDRO's that each particular deficiency will not be detailed here, but the Court is invited to thoroughly review the Plaintiff's submission to gain an appreciation of the scope of the problem.
 * * * Many other technical problems exist which will not further be dealt with here.
An "invitation" to a trial court to search the record for deficiencies in a document does not constitute the specific statements, with particularity, of objections required by Civ. R. 53(E)(3). Therefore, we decline to address any issues not specifically raised at the trial level. See, Searcy v. SuperEight Motel (Mar. 2, 1994), Montgomery App. No. 14065, unreported; "It is a settled axiom in the law that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this court and will not be addressed." We therefore must look to the actual objections to determine what issues were properly before the trial court.
In the objections to the magistrate's decision, Mr. Emerson claims that the QDRO's do not comport with the generally accepted form and are technically deficient. We begin with the contention that the QDRO's are not in proper form. Mr. Emerson argues that "the basic requirements of a QDRO are: (1) name and last known address of the participant; (2) name and last known mailing address of each alternate payee covered by the order; (3) the amount or percentage of the participant's benefit to be paid by the plan or the manner in which such amount is to be determined; (4) the number of payments or the period to which the order applies, i.e., when payments are to begin and end; and (5) each plan to which the order applies." He does not contend, however, that the original QDRO's are missing these basic requirements. Instead, he argues that the QDRO's have "many extraneous and irrelevant paragraphs and clauses beyond the above enumerated required provisions, which are not appropriate for a QDRO, and which add benefits and privileges for the Plaintiff, and further the mandatory clauses are not organized in the proper sequence nor do they contain the generally accepted QDRO language."
Our review of the record reveals that, while the above-referenced "basic requirements" may not be set forth in the order urged by Mr. Emerson, the original QDRO's do contain the information listed. We do not find that the QDRO's are deficient merely because they might not be in the same sequence as those provided by Mr. Emerson. Furthermore, we note that, in his objections, Mr. Emerson failed to identify the paragraphs and clauses that he contends improperly benefit Mrs. Emerson or which are extraneous or irrelevant, and he failed to state how Mrs. Emerson was improperly benefitted by the QDRO's. We cannot say that the trial court erred by declining to search the documents in order to find clauses that Mr. Emerson might find offensive. Therefore, we find that the trial court did not err by overruling this objection.
We next turn to Mr. Emerson's claim that the QDRO regarding his military pension is technically deficient. Specifically, he argues that the original QDRO is labeled "Qualified Domestic Relations Order" despite the fact that military pensions cannot be divided by QDRO. Mr. Emerson fails to cite any authority for this assertion in either his objections or his appellate brief. Furthermore, a review of his proposed QDRO reveals that Mr. Emerson merely re-labeled the military pension QDRO as a "Judgement Entry;" in all other respects, it is in the same form as his other QDRO's. Therefore, the only claimed deficiency is in the title of the document — a deficiency that Mr. Emerson fails to show to be prejudicial. We conclude that Mr. Emerson failed to provide support for his allegation of deficiency and that the trial court, therefore, did not err in overruling this objection.[1]
Mr. Emerson also claims that the QDRO regarding his civil service pension is technically incorrect because it fails to contain language stating that the order is governed by 5 CFR 838.302(a). Mr. Emerson does not state how the omission of this language affects the QDRO except to state that the plan administrator "will not accept a court order labeled as a Qualified Domestic Relations Order" without the reference to the cited regulation. However, we note that Mr. Emerson failed to submit any evidence to support his claim that the order would not be accepted by the plan administrator.
Finally, Mr. Emerson also contends that the civil service pension QDRO is deficient because it does not "address the fact that the present spouse of Mr. Emerson must give consent" if an annuity is elected. Our research reveals that5 U.S.C.A. 8339(j)(1)(B) does require the written consent of a participant's current spouse in order to have an annuity computed for the former spouse. However, there is no evidence in the record to support a finding that Mr. Emerson was re-married at the time the original QDRO's were executed. Furthermore, there is no evidence in the record to suggest that the written consent of any current spouse cannot be submitted separately from the QDRO. Therefore, we cannot say that the trial court abused its discretion in overruling this objection.
We next turn to the issue of the magistrate's finding that there was "inexcusable delay" in filing the QDRO's. Mr. Emerson contends that this finding is correct, but that the magistrate unfairly penalized him for the delay by failing to use his proposed QDRO's. We find no merit in this argument. A reading of the magistrate's decision indicates that she did find that the parties had unnecessarily delayed the filing of the QDRO's and had thus left their client's interests unprotected for a period of more than two years. We note that the record supports this finding. Even though it was Mrs. Emerson's attorney who agreed, and was subsequently ordered, to draft the QDRO's, we conclude that Mr. Emerson was also dilatory; as an officer of the court, his attorney could have drafted proposed QDRO's at any time during the years between the final decree and the entry of the QDRO's.
Moreover, the magistrate's decision was not based upon the finding of delay, but was based instead upon the finding that the QDRO's submitted by the parties were not substantially different. We conclude that the finding of delay was not germane to the magistrate's decision, and has no bearing on whether the QDRO's entered are correct.
Based upon the record before us, we cannot say that the trial court abused its discretion by overruling Mr. Emerson's objections to the magistrate's decision. Accordingly, the Second Assignment of Error is overruled.
 III
Mr. Emerson's First Assignment of Error states:
 THE TRIAL COURT ERRED BY NOT CONSIDERING THE EVIDENCE PRESENTED BY DEFENDANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION AND PERMANENT ORDER.
Mr. Emerson contends that the trial court erred by failing to consider evidence presented as exhibits to his objections to the magistrate's report. Specifically, Mr. Emerson submitted the affidavit of his attorney and a transcript of the November 12, 1993 final hearing for the court's consideration.
We find that the trial court did not abuse its discretion by failing to consider the submitted evidence. First, Civ. R. 53(E)(4)(b) provides that a "court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration." We find no support in the record for a finding that either of these exhibits were ever submitted to the magistrate for her consideration, or that they could not have been produced with reasonable diligence. Therefore, we conclude that the trial court correctly refused to consider them. Rayner v.Rayner (June 29, 1994), Montgomery App. No. 14011, unreported.
Second, after reviewing both of these exhibits, we find that the only basis for their presentation was to support Mr. Emerson's claim that counsel for Mrs. Emerson had been dilatory in preparing the QDRO's and that she had not permitted him to review the documents prior to submitting them to the court. As noted in Section II above, we found that the magistrate's finding of "inexcusable delay" in filing the QDRO's irrelevant to her determination that the original QDRO's should remain in effect. Furthermore, the fact that counsel for Mr. Emerson did not have an opportunity to review the original QDRO's prior to their submission had no bearing on the magistrate's finding that the QDRO's submitted by Mr. Emerson were substantially the same as the original QDRO's. Therefore, we conclude that the evidence contained within the exhibits was not relevant to the trial court's resolution of the matters raised in Mr. Emerson's objections, and thus, we cannot find that he was prejudiced by the court's failure to consider them.
Accordingly, the First Assignment of Error is overruled.
 IV
Both of Mr. Emerson's Assignments of Error being overruled, the judgment of the trial court is Affirmed.
GRADY, P.J., and WOLFF, J., concur.
[1] We also note that Mr. Emerson did not appeal from the final decree of dissolution, which specifically stated that a QDRO would issue for the military pension. Therefore, this issue may be deemed waived on appeal.